### PAULY v. O'BRIEN.

(Circuit Court, S. D. California. August 12, 1895.)

No. 598.

BANKS AND BANKING—NEGOTIABLE INSTRUMENTS.

Where a person, at the solicitation of national bank officers, gave his note to the bank to take up the note of a stranger, for the purpose, as stated by the officers, of getting the old note "out of the past-due notes," *held*, that the maker of the new note was liable to the receiver of the bank, on a renewal of the note, whether the transaction was a real one, or a mere trick to make it appear to the government and the creditors and stockholders that the bank had a valuable asset which it in fact did not have.

This was an action at law by Frederick N. Pauly, receiver of the California National Bank of San Diego, against J. E. O'Brien on a promissory note made by the latter to the bank.

David L. Withington, for plaintiff.

E. W. Britt and Works & Works, for defendant.

ROSS, Circuit Judge. This is another of the many rascally transactions disclosed in suits brought before this court in connection with the insolvent California National Bank of San Diego. The action is upon a promissory note executed by the defendant to the bank, and is submitted to the court upon an agreed statement of facts which shows—First, that the facts alleged in the complaint, which is in the ordinary form in such actions, are true; and, second, the purpose of the note and the circumstances under which it was executed, which are, in substance, as follows: On the 15th day of November, 1889, one Naylor was indebted to the bank in the sum of $3,714.40, evidenced by his promissory note, secured by a deposit with the bank of a lot of jewelry as collateral. Naylor was insolvent, and, on the day named, the bookkeeper of the bank, who was a brother of the defendant, at the instance of its vice president, one D. D. Dare, asked the defendant to give his note to the bank in place of and to take up that of Naylor, at the time stating "that Naylor's note was past due, and was secured by collaterals which were believed to be ample to pay the note, and that the bank wanted to get the note out of the past-due notes, and that the Naylor note and collaterals were to be collateral to the note to be given by him, and would wipe his note out when the collaterals were disposed of, assuring him that the bank held jewelry as collateral sufficient to pay it." The defendant consented to this request, and, pursuant thereto, executed his note to the bank for the sum of $3,-

714.40, "and the Naylor note was entered as paid on the books of the bank, and the O'Brien note was entered as a discount for its face." Thereafter, the bank sold "some or all" of the jewelry for the sum of $1,150, and credited that amount on the note given by the defendant. Subsequently, and on the 21st of March, 1891, the bank informed the defendant of the sale, at which time he executed to the bank a new note, for the amount of the first one, less the amount realized by the sale of the jewelry; and still later, to wit, on the 21st of July, 1891, defendant executed to the bank, in renewal of the one last mentioned, the note sued on herein, the amount of which was the amount of the note of March 21, 1891, without interest. Each and all of the notes executed by the defendant, proceeds the agreed statement, "were given without any other consideration than here stated, and that the only knowledge said Naylor had of the matter was that Dare told him that the jewelry had been sold, and applied on the note. The Naylor note had been carried, and each of the O'Brien notes were carried, among the assets of the bank upon its books and in its statements to the comptroller, as an asset for their face."

Upon these facts, I think it clear that the plaintiff is entitled to judgment. It is said for the defendant that the note sued on was without consideration. Not so, according to the agreed statement of facts, for it is there stated that it was executed in place of and to take up the note of Naylor, then represented by the bank officers to be past due, and to be secured by collaterals which were believed to be ample to pay it, and which they represented the bank wanted to get "out of the past-due notes," and which, together with the collaterals, were to stand as collateral to the note executed by the defendant, upon the execution of which the Naylor note was entered as paid on the books of the bank, and the defendant's note was entered thereon "as a discount for its face." It thus appears that the defendant executed his first note, subsequently renewing it from time to time, and ultimately by the note in suit, for the purpose of having it take the place of the Naylor note, which, together with the collaterals, "were to be collateral to the note" given by him. If, however, this was not really the case, but that, in truth, the transaction was a mere trick to make it appear to the government and to the creditors and stockholders of the bank that it had a valuable note when in fact it did not have one, the result must be the same, for, when parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound himself. It will never do for the courts to hold that the officers of a bank, by the connivance of a third party, can give to it the semblance of solidity and security, and, when its insolvency is disclosed, that the third party can escape the consequences of his fraudulent act. Undoubtedly, the transaction in question originated with the officers of the bank, but to it the defendant became a willing party. It would require more credulity than I possess to believe that the defendant, when his brother, who was the bookkeeper of the bank, came to him with the proposition of its vice president, in its every suggestion and

essence deceptive and fraudulent, did not know its true character and purpose. So far as appears, Naylor was a total stranger to him. Why should he execute his note to take up the note of Naylor? What moved him to do it, except to enable the officers of the bank to supplant the overdue note of Naylor with a live note, which he now insists was without consideration and purely voluntary, but which enabled the bank officers to make a deceptive, and therefore fraudulent, showing of assets? Obviously, nothing. There will be judgment for the plaintiff for the amount due upon the note sued upon, according to its terms, with costs.