# BANK OF SLATER v. UNION STATION BANK, Appellant.

### Division Two, June 25, 1920.

1. **EXCLUSION OF PROOF: No Proffer: Review.** Where the trial court refuses to permit a witness to answer certain questions propounded by appellant, it becomes necessary for appellant, in order to have such ruling reviewed on appeal, to offer to show what he expects to prove by the witness in answer to the questions. The

Bank of Slater v. Union Station Bank.

appellate court cannot speculate upon what the witness would have testified had he been permitted to answer.

2. **BANKING: Credit to President.** Where there was no proof or offer of proof that an arrangement was made by defendant bank and the president of plaintiff bank that the money represented by a loan made to plaintiff, for which the president alone gave his individual note, was to remain on deposit with defendant and never to be drawn out either by plaintiff or its said president, the trial court did not err in permitting plaintiff to prove that it passed the loan to the credit of its president and that he checked it out.

3. ———: **Deposit For Use of President: Trustee.** An indorsement of the words "Use of I. W. Avitt" upon the deposit slip sent by the defendant bank to the bank of which Avitt was president did not make his said bank trustee of the money in the slip named, nor did Avitt thereby alone have the right to draw out the money or assign the right to some one else. On the contrary, the deposit slip, showing a deposit to the credit of the bank of which Avitt was president, authorized said bank to collect from defendant bank, which had issued the slip, the amount of money named in it, and authorized its assignee, upon an assignment by said bank, to collect the amount.

4. ———: ———: **To Pay Note.** The bank to which defendant bank sent a deposit slip indorsed "Use of I. W. Avitt" is not bound to pay a note for the amount given to defendant bank by Avitt at the time the slip was sent, nor can the defendant bank, when the assignee of the bank to which the slip was sent attempts by suit to collect the amount named in the deposit slip, receive credit on the deposit for the amount of Avitt's individual note. The statute (Sec. 9989, R. S. 1909) says that "no person is liable upon the instrument whose signature does not appear thereon, except as herein otherwise expressly provided."

5. ———: **Action to Collect Debt: Peremptory Instruction.** Where the facts adduced demonstrate plaintiff's right as a matter of law to judgment for a named sum, and the only point at issue is the date of demand, it is not error for the court to instruct the jury to return their verdict for plaintiff for said amount, plus interest from the date the evidence shows demand was made.

6. ———: **Loan.** To lend is to allow the custody and use of a certain thing, on condition of a return of the thing lent, or, in case of money, and perhaps other things, of its equivalent in kind. A contract by which neither the bank nor its president was to have the custody or use of money at any time, but all of it was to remain in the actual custody and control of the bank which issued

a deposit slip to the other showing a deposit to its credit of the amount, was not a loan.

7. ————: **Deceiving Public Officers: Public Policy: Estoppel.** It is a question of the gravest doubt whether an agreement which in effect is a mere device to aid a bank and its president to mislead and deceive the officers of the law whose duty it is from time to time to examine into and ascertain its financial condition, and whereby its required reserve under the law was made to appear to be greater than it really was, by keeping the whole transaction off the books of both banks, except that the one could enter the amount of a deposit slip issued to it by the other upon its own books, is not void for reasons of public policy, and whether any defense in a suit for the amount of the deposit is not barred by estoppel. But the propositions, though discussed, are not decided, because not raised, and because a contrary doctrine is countenanced in Title & Trust Co. v. Brady, 165 Mo. 197.

Appeal from St. Louis City Circuit Court.—*Hon. Karl Kimmel*, Judge.

AFFIRMED.

*Marshall & Henderson* for appellant.

(1) Upon the case made, the plaintiff was not entitled to recover and the trial court erred in not giving the instruction to find for the defendant. (2) The circuit court erred in refusing to admit evidence of the agreement between the defendant bank and I. W. Avitt, under which the loan of eight thousand dollars was made. The whole of the contract between Avitt and the defendant bank, which was partly represented by the deposit slip and partly by the note Avitt gave to the defendant bank, did not express the whole contract. It expressly declared that the eight thousand dollars was for the use of I. W. Avitt, but it did not express what the use was to be, and parol evidence was, therefore, admissible to show what use it was agreed Avitt should make of the eight thousand dollars. Greening v. Steele, 122 Mo. 294; Bowers v. Belle, 193 Mo. App. 218. (3) The case of Sparks v. Dispatch Transfer Company, 104 Mo. 531, has no application to the case at bar.

(4) The law applicable to the case at bar is clearly set forth in Hanover National Bank v. First National Bank, 109 Fed. 421; Flower v. Commercial Trust Company, 223 Fed. 321, and Flower v. Central National Bank, 223 Fed. 323.

*Jones, Hocker, Sullivan & Angert* for respondent.

(1) The defendant did not offer to prove its alleged affirmative defense, and the ruling of the trial court on the admission of parol evidence is not here for review. Bank v. Aull, 80 Mo. 202; Mfg. Co. v. Ry. Co., 230 Mo. 77; Shelby Co. Railway v. Dimmitt, 235 Mo 492; Holzemer v. Ry. Co., 261 Mo. 411. (2) The agreement of the parties was in writing and parol evidence was inadmissible to vary it. R. S. 1909, sec. 9989; Sparks v. Transfer Co., 104 Mo. 531; Wurlitzer Co. v. Rossmann, 190 S. W. (Mo. App.) 636; Bank v. Lead Co., 173 Mo. App. 634. (3) Even if the Farmers Bank had received the proceeds of Avitt's note to its own use, the law would imply no agreement of the bank to pay the note. Walker v. Brown, 28 Ill. 288; Hospital v. Fairbanks, 129 Mass. 78; Sullivan v. Ry. Co., 135 Mich. 661. (4) By the terms of its certificate of deposit, appellant estopped itself to set up the defense pleaded in its answer. Bank v. Frame, 112 Mo. 513.

WILLIAMSON, J.—This is a suit on the part of the Bank of Slater, as assignee of the Farmers' & Merchants' Bank of Slater, Missouri (hereinafter called the Farmers' Bank), against the Union Station Bank, to recover a deposit of $7569.43 claimed by plaintiff to have been due to the Farmers' Bank from the Union Station Bank. The assignment was dated July 1, 1913, and plaintiff demanded payment on July 5, 1913. Defendant refused to pay. The petition, in substance, set up the facts above stated.

The defense was a general denial, coupled with allegations to the effect that on or about September 15, 1910, defendant loaned the Farmers' Bank the sum of

$8000, upon a parol agreement that the entire sum should remain on deposit with defendant to the credit of the Farmers' Bank; that the Farmers' Bank should pay defendant interest thereon at the rate of six per cent per annum, and that defendant might, at any time, credit said loan with said deposit and thereby discharge the indebtedness of the Farmers' Bank to it, but that this money was never to be drawn out of appellant's bank. The purpose of this arrangement was to swell the apparent assets of the Farmers' Bank to that extent, presumably for the benefit of inquisitive bank examiners, since appellant alleges that the loan was desired in order to keep up the reserve of the Farmers' Bank as required under the laws of Missouri.   Since this purpose would be defeated by the execution of an obligation by the Farmers' Bank in evidence of this loan, it was further agreed by the borrowing and lending banks above named, as defendant alleges, that one I. W. Avitt should execute and deliver to defendant his personal note for $8000, bearing interest at six per cent per annum, which he accordingly did. Defendant then credited the Farmers' Bank with $8000.   Avitt was then president of the Farmers' Bank.  It is alleged that the original note was renewed on March 1, 1913, subject to the same understanding; that the Farmers' Bank paid the interest, both on the original and the renewal notes, and that prior to July 1, 1913, defendant applied so much of the deposit as then remained in its hands, to-wit, $7569.43, to the payment of the Avitt renewal note, given in evidence of the alleged loan to the Farmers' Bank, and thus closed the account.  Defendant also averred that the money was loaned to the Farmers' Bank, and not to Avitt, and that the Farmers' Bank got the benefit of the loan ''as aforesaid.''   The reply was a general denial.

The evidence tended to support the allegations of the petition and answer, except as to the alleged parol agreement, concerning which no evidence was admitted. Whether or not any was offered will be determined later.  The evidence also showed that upon the delivery

of the original Avitt note, defendant issued to the
Farmers' Bank a deposit slip showing a deposit of $8000
to the credit of the last named bank. The Farmers'
Bank passed the amount to the credit of Mr. Avitt, who
promptly checked it out. This slip was in the usual
form except that it bore this memorandum: "Use of
I. W. Avitt, E. C." The letters "E. C." were the
initials of Emerson Chanselor, who was the cashier of
the defendant bank when the slip was made, but who
was dead at the time of the trial. Mr. Avitt also exe-
cuted to defendant another note upon which he secured
the sum of $8000. By a contract bearing date of July 1,
1913, the Farmers' Bank in writing assigned to plaintiff
certain assets, including the claim here in question, in
consideration of an agreement upon the part of plain-
tiff to pay the claims of the depositors of the Farmers'
Bank, and thereupon the last named institution, being
insolvent, went out of business. Mr. I. W. Avitt, in like
unfortunate condition financially, took up his abode in
Winnipeg, Canada, of which city he was a resident at
the time this case was tried. It is alleged in the answer
that "prior to, to-wit, July 1, 1913," defendant applied
the deposit in question to the payment of "the loan
aforesaid," meaning thereby the loan of $8000 to the
Farmers' Bank. The evidence showed the application
was made August 8, 1913. This was the sum of plain-
tiff's evidence.

Defendant then asked for a peremptory instruction
to the jury to find for defendant. This instruction was
refused, and defendant excepted. No evidence being
offered by defendant, the court thereupon gave to the
jury a peremptory instruction to find for the plaintiff in
the sum of $7569.43, with interest at the rate of six per
cent per annum from the date that payment was de-
manded by plaintiff. Defendant duly saved an excep-
tion to this instruction. The verdict was in favor of
plaintiff in the sum of $7569.43 and interest at six per
cent per annum from July 5, 1913, or a total sum of
$9504.12. A motion for a new trial having met with

defeat, defendant has duly appealed. Its assignments of error are shown, in substance, in the opinion.

I. Appellant's first assignment of error relates to the refusal of the trial court to permit appellant to prove the alleged parol agreement between itself and I. W. Avitt concerning the $8000 deposit. The record touching this matter is as follows:

Proffer of Proof.

The president of the appellant bank, called as a witness for respondent, testified that he instructed appellant's cashier to take I. W. Avitt's note for $8000 and place that amount to the credit of the Farmers' Bank. On cross-examination, he was asked by appellant to tell the jury what he knew about "the arrangement under which this note was executed to the Union Station Bank." To this question respondent objected on the ground that the note was an obligation in writing and that parol evidence concerning any negotiations leading up to its execution was inadmissible. The court sustained the objection. Later, this witness testified concerning the original $8000 note, in substance, that Avitt came to St. Louis to negotiate a loan, and, in the words of the witness, "after talking over the matter with Mr. Chanselor, the latter telephoned to me, and then explained to me why he desired a loan of $8000." At this point, respondent again objected on the grounds above stated, and the court sustained the objection. Appellant then asked the witness "what, in banking circles, is understood when a deposit ticket, such as this is, issued by a bank, by [bears] the words, 'Use of I. W. Avitt' "? The witness answered that he knew the custom of his bank, but not of others. He was then asked what was the purpose and intent of the Union Station Bank, in putting the words "Use of I. W. Avitt" on this deposit slip. Respondent's objection was sustained. The witness was then asked to what use this money was to be applied, and respondent's objection to that question was sustained. Appellant duly saved an exception to these rulings in each instance. This is all that appears in the record on

this proposition. It will be noted that appellant made no offer to show what it expected to prove by the witness in this connection. So far as this record discloses, the witness might have been utterly ignorant concerning any matter to which these questions related. We cannot reverse a judgment on a speculation as to what a witness would have said had he been permitted to testify. In the absence of an offer of proof showing what appellant expected to prove by the answers of the witness to these questions, we must hold that the matter is not before us for review. This is the immemorial rule in' this jurisdiction. [Arfstrum v. Baker, 214 S. W. (Mo.) 859, 1. c. 860; Smith v. Riordan, 213 S. W. (Mo.) 61, 1. c. 64; Holzemer v. Railway Co., 261 Mo. 379, 1. c. 411; Shelby County Railroad v. Dimmitt, 235 Mo. 489, 1. c. 492.] We rule this point against appellant.

II. Appellant's second assignment of error is that the trial court erroneously permitted respondent to prove that the Farmers' Bank passed the loan in question to the credit of I. W. Avitt, and that he thereupon **No Proof.** checked that sum out of that bank. The essence of appellant's argument upon this point is that since Avitt was president of the Farmers' Bank, his knowledge was the knowledge of the bank, and therefore that bank was charged with notice of the arrangement alleged to have been made by Avitt with the appellant that the money was to remain on deposit with appellant, and was never to be drawn out either by Avitt or the Farmers' Bank. The fundamental fault in this argument is, of course, that there is neither proof nor an offer to prove that any such arrangement ever was made. We rule this point against appellant for that reason. Other reasons might easily be assigned, but this suffices.

III. Appellant assigns as error the refusal of the trial court, upon the close of respondent's evidence, to give to the jury a peremptory instruction to find in favor of the appellant. In substance, appellant ar-

Bank of Slater v. Union Station Bank.

gues, under this assignment, that by the in-
**Deposit to Credit of Bank.** dorsement of the words "Use of I. W. Avitt" upon the deposit slip which it sent to the Farmers' Bank, that bank "became the trustee of the $8000 . . . and I. W. Avitt became the beneficiary of that money, and he alone had the right to draw it or assign his right to some one else, none of which was ever done."

Again appellant is confronted with the fatal flaw in its case, that there is in this record neither proof nor an offer to prove that the use of this money by I. W. Avitt was subject to any limitation or restriction whatever. So far as this record discloses, the Farmers' Bank was merely notified that it had on deposit with appellant the sum of $8000, which was for the use of I. W. Avitt. So far as appears here, the Farmers' Bank might as well have had this $8000 in its own vaults as in the vaults of appellant. ' If it had had the money in its actual, physical possession, could there be any doubt of its right to credit it to Avitt's account and to honor his checks for the full amount? We think not. In effect, that is what it did. All that the Farmers' Bank knew was that Avitt was entitled to use $8000 which it had to its credit for his use. Avitt got the use of it. There is no doubt about that. It appears that appellant had loaned Avitt another $8000 also. There is no question about his right to use that sum. Now suppose that appellant had notified some bank other than the Farmers' Bank that appellant had credited such other bank with that second sum of $8000 for the "use of I. W. Avitt," and the bank so notified had thereupon cashed Avitt's check, drawn upon itself for $8000, would anybody question the right of such bank to collect $8000 from appellant? We cannot imagine upon what grounds such a contention could be entertained.

But the whole matter may be disposed of upon another ground. In effect, appellant is asserting that respondent, as assignee of the Farmers' Bank, must pay a note which appellant holds against I. W. Avitt, and

upon which, so far as appears in this record, the Farmers' Bank was never bound. This note is a renewal of another note which was executed in 1910. There was at that time, as there has ever since been, a terse declaration in our statute relating to negotiable instruments, which reads as follows:

"No person is liable upon the instrument whose signature does not appear thereon, except as herein otherwise expressly provided." [Sec. 9989, R. S. 1909.]

We do not know of any exception whose saving grace would relieve appellant from the effect of this sweeping statute, nor has appellant's eminent counsel pointed out such an exception. True, this is not an action brought by appellant upon that note, but observe the guarded language of the statute: "No person is *liable* upon the instrument." To support appellant's contention here would be as effectually to hold the Farmers' Bank *liable* upon the Avitt note as if appellant were directly suing that bank upon that note. But if it be said that appellant is simply seeking to enforce a parol agreement made at the time the note was executed, we are again confronted with the insuperable objection that there is no proof nor offer of proof that there ever was such an agreement. There is no merit in this assignment.

IV. As a fourth and last assignment of error, appellant asserts that the court erred in the instruction given to the jury, as above set out. This instruction is a peremptory direction to the jury to find for the respondent. The only matter left for the jury to determine was the date upon which respondent Peremptory Instruction. demanded and appellant refused payment. The determination of that date fixed the time from which interest should be calculated. There was substantial evidence to support the verdict upon that proposition. Unless the instruction was erroneous upon other matters, the appellant must fail on this point also. The undisputed facts are that on July 1, 1913, the Farm-

ers' Bank had on deposit with appellant the sum of $7569.43; that on that day the Farmers' Bank for a valuable consideration assigned that credit to the respondent and that on July 5, 1913, respondent demanded payment and appellant refused to pay. There was neither proof nor offer of proof to the contrary. Appellant's argument under this assignment is based upon the assumption of error on the part of the trial court in refusing to admit evidence of the alleged parol agreement. For the reasons stated in paragraph one of this opinion, we hold that that point is not before us for review. No assault is made upon this instruction upon any other ground. We hold that this assignment is likewise without merit.

V.  Certain other phases of this case are worthy of consideration, because of their peculiar character. Appellant's whole case is based upon the alleged parol agreement. As pleaded, this agreement, was, in effect, merely a device to aid Avitt and the Farmers' Bank to mislead and deceive the officers of the law whose duty it was from time to time to examine into and ascertain the financial condition of the Farmers' Bank, for the protection of its depositors and others having business dealings with it. Furthermore, the alleged loan was not a loan. To lend is to allow the custody and use of a certain thing, on condition of the return of the thing loaned, or, in the case of money, and perhaps other things, of its equivalent in kind. [Webster's Dictionary; Century Dictionary; Anderson's Dictionary; Black's Dictionary; Words & Phrases, Vol. 5, p. 4196; Griffen v. Train, 81 N. Y. Supp. 977, l. c. 981.] But the very pith and marrow of this alleged contract of lending was that neither Avitt nor the Farmers' Bank was for a single instant to have the custody or use of any part of this money. Every dollar of it was to remain in the actual possession and control of appellant. Neither Avitt nor the Farmers' Bank was to get anything whatever, except an entry upon appellant's books—and that entry

Bank of Slater v. Union Station Bank.

appellant reserved the right to cancel at any time without cause and without notice. Neither of the pretended borrowers had the right to use a single dollar of the money for any purpose whatever—except to deceive the State Banking Department. It was for that explicit reason that the alleged contract was not reduced to writing. No hint of it was written, except the cryptic phrase, "Use of I. W. Avitt," which, signed by initials only, appeared upon the deposit slip, but not upon the books of either bank. The transaction had one, and but one, earmark of a loan—it bore interest. In plain terms, appellant and Avitt, intending to evade the law, entered into a scheme whereby the assets of the Farmers' Bank were to be made to appear to be $8000 greater than they actually were, *"in order to keep up its required reserve under the laws of the State of Missouri,"* but, to quote the answer itself, *"as said bank did not want said loan evidenced by a note or bill payable which would show on its books a liability,"* it was agreed that the true nature of the matter should rest in parol. In other words, the books of both of the banks were to be falsified. The Farmers' Bank was to be liable, but was not to appear liable. For a money consideration, appellant lent its active aid to this plan, well knowing the full intent and purpose of it. The alleged parol agreement might well be held void for reasons of public policy.

"The law will not enforce contracts that are against the public good, and, therefore, are forbidden by public policy." [HARLAN, J., in Ritter v. N. Y. Met. Life Ins. Co., 169 U. S. 158; MILLER, J., in Sprott v. United States, 20 Wall. 463.]

"Public officers should act from high consideration of public duty, and hence every agreement whose tendency or object is to sully the purity or mislead the judgments of those to whom the high trust is confided, is condemned by the courts. The officer may be an executive, administrative, legislative or judicial officer. The principle is the same in either case." [9 Cyc. 485; Greenhood on Public Policy, p. 529.]

Similar defenses are also barred in many well considered cases on the ground of estoppel. [Lyons v. Benney, 79 Atl. 250; Harrington v. Connor, 51 Neb. 214; Pauly v. O'Brien, 69 Fed. 460; State Bank v. Kirk, 216 Pa. 452; Lyons v. Westwater, 104 C. C. A. 664, 181 Fed. 681; State Bank v. Forsyth, 108 Pac. (Mont.) 914; Hurd v. Kelly, 78 N. Y. 588; Best v. Thiel, 79 N. Y. 15, and Murphy v. Gumaer, 18 Colo. App. 183, 70 Pac. 800.]

The facts in this case inevitably suggest the question we have discussed in this paragraph. Counsel for respondent, however, have not raised it—being deterred, doubtless, by the decision in Title & Trust Co. v. Brady, 165 Mo. 197, where a contrary doctrine is countenanced —and we therefore refrain from ruling upon the proposition. We have touched upon it, for the reason that if the Brady case, supra, is considered as announcing "the Missouri rule" upon this topic, as some commentators have said, that rule is apparently in conflict with numerous and respectable authorities, and its soundness may admit of question.

For the reasons stated in preceding paragraphs, the judgment is affirmed. All concur.