S. S. McConnell, Receiver, *v.* McCleish & Thomas.

(*Nashville.* December Term, 1928.)

Opinion filed July 20, 1929.

Murray & Murray and S. J. Everett, for complainant, appellee.

J. T. Rothrock, for defendant, appellants.

Mr. Chief Justice Green delivered the opinion of the Court.

This is a suit by the receiver of the Peoples Savings Bank to recover the balance of a $1,000 note executed by defendants McCleish & Thomas in favor of said bank,

The defendants answered and denied liability on the ground that there was no consideration for the note. Proof was taken and the Chancellor rendered a decree in favor of the receiver. The Court of Appeals affirmed the Chancellor's decree and the writ of *certiorari* was granted by this court and the case argued here.

In January, 1925, one R. P. Bayly was indebted to the Peoples Savings Bank in the sum of $1,000 evidenced by his note. The cashier of the bank, T. B. Carroll, had been criticised by the finance committee of that institution for extending the credit to Bayly. To escape this criticism Carroll procured from his friend C. A. Thomas, of defendant firm, the note of McCleish & Thomas, which was substituted for the Bayly note in the bank's discounts. The agreement between Carroll and Thomas was that McCleish & Thomas would not be called on to pay their note and that said note would be returned to them at any time desired. Carroll turned over the Bayly note to Thomas with this endorsement: "We agree to take this note up when the conditions are not complied with and we have C. A. Thomas' note in lieu of this. T. B. Carroll, Cashier, 1-3-25."

It was also stated by Carroll to Thomas that Bayly would pay by monthly installments. Bayly did pay $230 before the bank closed June 6, 1925, all of which payments were appropriated by the bank, although they were credited on the McCleish & Thomas note. McCleish & Thomas had nothing to do with said payments or with the credit entries on the back of their note.

After the receivership Thomas demanded the return of his firm's note from the liquidating agent, explaining the circumstances of its execution, and offered to give up the Bayly note. This proposition was refused,

Upon the facts stated, we think the result reached by the Chancellor and by the Court of Appeals is opposed to previous decisions of this court and opposed to the weight of authority.

██ The McCleish & Thomas note was without consideration. McCleish & Thomas were accommodation makers of the note sued on. They received nothing of value. Whether the note be regarded as made for the accommodation of Carroll, or for the accommodation of the bank, is immaterial. Neither Carroll nor the bank parted with anything of value and the bank never became a holder of this note for value. There was no endorsement of the Bayly note to McCleish & Thomas. There was no design to transfer title thereto by delivery to McCleish & Thomas. The Bayly note was placed in the hands of McCleish & Thomas to be held as a sort of voucher or receipt for their own note. The bank never surrendered its title to the 'Bayly note but was all the while recognized as the owner of that instrument by Carroll and by Thomas. The bank could have reclaimed possession of the Bayly note at any time and, as stated before, the bank continued to assert its ownership of the Bayly note by appropriating the payments made thereon by Bayly.

It would seem that the provisions of the Negotiable Instruments Act should defeat this suit. By section 28 of chapter 94 of the Acts of 1899 absence or failure of consideration is a matter of defense as against any person, not a holder in due course. By section 29 of the same statute an accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser without receiving value therefor and is (only) liable on said instrument to a holder for value. The

bill filed by the complainant herein presents nothing but a simple suit upon a note, an action of debt brought into chancery court, with no averments that would take the case out of the ordinary rules defining the rights of parties to negotiable instruments.

Aside from the statute, however, we think the complainant must be denied a recovery herein upon authority of two decisions of this court.

The case of *Tagg* v. *Tennessee National Bank,* 56 Tenn. (9 Heisk.), 479, was a suit upon a promissory note executed by one Tagg to the said bank, of which bank one Rutter was president. Among other, things, the court said:

"But the defendant resists a recovery on the note, upon the ground that it was made without consideration. This was a question of fact for the jury. It was testified by Tagg that he received nothing, either from Rutter or the Bank, in consideration of the note; that he executed and delivered it to Rutter at his solicitation, upon the agreement of Rutter that it should never be used, and that Rutter passed it to the Bank without his knowledge or consent. It is manifest that upon this evidence, if it was received as true, there could be no verdict against the defendant. If it be true, as is conjectured, that Rutter's object was to place the note in Bank to make a colorable and fraudulent appearance of larger assets than the Bank really had, even if Tagg knew of this object and concurred in it, as there was no consideration passing between Rutter and Tagg, according to the evidence of Tagg, the Bank could have no recovery against Tagg on the note. *Agricultural Bank* v. *Robinson,* 24 Maine, 276; *Lime Rock Bank* v. *Hewitt,* 50 Maine, 269."

In *Trust Company* v. *McDougald,* 132 Tenn., 323, the cashier of the bank procured the defendant McDougald to execute his note in favor of the bank for the accommodation of that institution. The cashier used McDougald's note to retire certain worthless paper held by the bank. The bank later went into the hands of a receiver, who brought suit against McDougald. This court found that there was no consideration for the note—that McDougald got nothing and the bank parted with nothing; and held that the bank could stand no higher than the cashier since it gave no value for the note; and that the receiver of the bank could assert no higher rights than the bank could have asserted, and the suit was dismissed.

Referring to the Maine cases cited in *Tagg* v. *Tennessee National Bank, supra,* in *Agricultural Bank* v. *Robinson,* 24 Maine, 276, it was held that a note made to a bank without consideration for the purpose of enabling the corporation, by including it as part of its assets, to make a colorable and false statement of its actual condition was void and an action could not be maintained on it by the promisees. It was said that an agreement between two parties to deceive and defraud a third did not constitute a valuable consideration between themselves.

In *Lime Rock Bank* v. *Hewitt,* 50 Maine, 269, where a note was executed to be exhibited to the bank commissioners as assets with the express understanding that it was only to be used for such purpose, the court said:

"That such a transaction would be against public policy and in violation of our statutes relating to our banking institutions is equally clear. That a note so given and received would be without consideration and void as between the parties to it is beyond all question."

In *Higgins* v. *Ridgeway*, 153 N. Y., 130, a note was executed to a bank for purposes similar to those outlined in the cases just mentioned. There was an agreement between an officer of the bank and the maker that the latter should not be called on to pay the note. The bank closed and the receiver brought suit. The New York Court of Appeals said:

"We think the import of defendant's evidence is that the delivery of the note in suit, as well as the note which was given to renew, was conditional, and was for the accommodation and to serve some particular purpose of the bank. Therefore, as there was no consideration for the note, and as the bank could not be regarded as a *bona-fide* holder, we are of opinion that the plaintiff's exceptions to the refusal of the court to direct a verdict for the plaintiff and to the charge of the court were invalid."

*Rankin* v. *City National Bank*, 208 U. S., 541, 52 L. Ed., 610, was a suit by the receiver of an Oklahoma bank against a Kansas City bank for the amount of a fictitious credit the latter bank had given the former bank by way of placating the bank examiner. Of the transaction the Supreme Court said: "The whole business from beginning to end, was, and was intended to be, a mere juggle with books and paper to deceive the bank examiner." But, as we read the decision, because the one bank never got anything and the other bank never parted with anything, no recovery was allowed.

To like effect see *Yates National Bank* v. *Lauber*, 240 Fed., 237; *Culter* v. *Fry*, 240 Fed., 238, and cases collected in Notes 26 L. R. A. (N. S.), 993, L. R. A., 1916A, 1218.

The only particular in which the case before us may be said to differ from those cited is that in those cases notes were executed without consideration to deceive the public or the bank examiners, while in this case the note, without consideration, appears to have been executed to deceive the finance committee of the particular bank. We are unable to see that the difference noted supplies the want of consideration. Consideration is equally lacking in either instance and the obliquity is the same. In neither instance, unless the bank be a holder for value, is it entitled to recovery on such a note, unless some element of estoppel appear. If any ground exists upon which the Peoples Savings Bank or its receiver might urge an estoppel against defendants from denying their liability on the note in suit, such facts have not been pleaded and this is a suit in equity where it is necessary to especially plead such matters.

The receiver refers to *Skagit State Bank* v. *Moody* (Wash.), L. R. A., 1916A, 1215, and *Galena National Bank* v. *Ripley* (Wash.), 26 L. R. A. (N. S.), 993. In both those cases, however, it is shown that a good and valid consideration was paid by the banks for the notes upon which suits were brought.

The receiver especially relies on the case of *Lyons* v. *Benney* (Pa.), 34 L. R. A. (N. S.), 105, and *Pauly* v. *O'Brien*, 69 Fed., 460. Each of these suits was brought by the receiver of an insolvent banking institution upon a note executed under conditions similar to the conditions attending the execution of the note herein sued upon. In each case the court held that, while lack of consideration might have defeated a suit by the bank itself, the receiver stood on higher ground than the bank,

inasmuch as he represented creditors, and a recovery was accordingly decreed.

*Lyons* v. *Benney* seems to proceed on the idea that an agreement between an officer of the bank and the maker of the note, the note being taken to serve some purpose of such officer or the bank, that the note shall not be paid is a fraud upon the creditors of the bank represented by a receiver. That may be granted, but if a fraud dœs no harm to such creditors, such fraud is not actionable. In the case before us, the Peoples Savings Bank gave up nothing so far as we can see on account of the McCleish & Thomas note, and if the bank or its creditors were in any way prejudiced by the transaction such prejudice is neither pleaded nor proven.

In the case of *Pauly* v. *O'Brien* it was said "when parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason as well as pure justice to leave bound who has bound himself." If it is meant by this language to invoke an estoppel, what we have said above is sufficient answer. If it is meant to invoke another principle of equity, that brings us to a consideration of the opinion herein of the Court of Appeals.

The Court of Appeals said: " . . . we are of the opinion that the defendants cannot be heard to deny liability on this note sued on. While they occupy the status of defendants to the suit of the receiver, yet they admit that they signed the note for the purpose of relieving Mr. Carroll, the cashier of the bank, of personal embarrassment and criticism from the directors of the bank, and aided him, by the method resorted to, in perpetrating a deception upon the bank officials who were entitled to know the facts. Mr. Thomas admits that he

entered into the transaction and executed the note of his firm for the purpose of aiding Mr. Carroll in carrying out this scheme of deception. . . . A court of equity is a court of conscience, and will not lend itself to any form of collusion or deception or fraud to aid one who has consciously entered into collusion with the agent of a principal in practicing a fraud upon the principal."

This seems to be a misapplication of *ex dolo malo non oritur actio.* The rule expressed in this maxim is employed to repel one who seeks the aid of a court of equity in respect to an evil transaction. It is applicable to a suitor, to a plaintiff, to a petitioner. Such was the application made in *Alston* v. *Bank,* 8 Hig., 420, and *Dobson* v. *Dobson,* 1 App. Rep., 370, cited by the Court of Appeals. The defendants in this case have filed no crossbill and are asking for no affirmative relief.

Another well settled rule of equity, as above suggested, is that a party seeking relief on the ground of fraud must have been damaged by the fraud complained of or must have been misled to his hurt thereby. We could not transgress this rule and by the use of the maxim first quoted justify a decree in favor of a complainant who had sustained no injury.

Perhaps a corporate receiver might maintain a suit in the interest of creditors, growing out of a fraudulent transaction in which its participation would have disabled the corporation from seeking the aid of a court of equity. It seems to us, however, that when a note is supported by no consideration and a corporation holding it is not a holder for value, the receiver of that corporation is no more entitled to a recovery on the instrument than the corporation would have been itself—no question of estoppel appearing.

For the reasons stated, we conclude that the decree of the chancellor and the decree of the Court of Appeals were erroneous and these decrees will be reversed and the bill dismissed.