Common Pleas Court of Cuyahoga County.

STATE EX REL SUPERINTENDENT OF BANKS V. REPUBLIC STEEL CORPORATION.

Decided January, 1932.

*Gilbert Bettman,* Attorney General, *Arthur J. Halle, Paul Kightlinger, Morris Berick* and *Frank T. Bow,* for plaintiff.

*Andrews & Belden* and *George Young,* for defendant.

McBRIDE, J. (Of Highland county sitting by designation).

There is little or no dispute in this case about the facts, and counsel have discussed the same fully in their briefs, but do not seem to agree upon the ultimate questions for determination.

Paraphrastically, counsel's questions may be stated as follows:

Counsel for plaintiff conceives the question to be—

Can a bank pledge its assets to secure a general depositor, even if the pledge is made concurrently with a new deposit?

Counsel representing Republic Steel contends the record presents this question—

Can a bank, when confronted with a crisis, in the exercise of good judgment, pledge its assets to a general depositor, to avert disaster, even if the pledge is made concurrently with a new deposit?

Considerable discussion has been indulged in as to whether there is any difference in law between a loan of funds to a bank, and a deposit of funds in a bank.

Whatever other questions may be presented by the record, we believe we must decide whether or not, considering the agreement in the light of all the facts and circumstances surrounding the parties, was the agreement intended to evidence the transaction as a loan and providing security therefor, or was the agreement intended to provide security for future deposits with the bank?

In addition to the observations made by counsel upon the evidence, it may be observed to be a reasonable inference that, at and before the time Mr. Wick, Republic's Vice President, determined the bank was not in a strong financial position and unsafe as a depository for Republic's funds, and that such funds should be withdrawn and deposited elsewhere, the bank was not, in fact, strong financially and was unsafe.

It may also be considered a reasonable inference that, Republic was of the opinion that with or without its accounts the Bank would ultimately fail; that it was only a question of time, that is, whether the time would be when the public learned that Republic had withdrawn its funds, if the same were withdrawn, or if left with the Bank the failure would be postponed. In fact, with the funds of Republic re-deposited the failure was deferred approximately three months. Had Republic remained in ignorance of the Bank's condition, it was, nevertheless, doomed to fail.

I think it was the intention of Republic to discontinue its business with the Bank in view of its condition, if

arrangements for Republic's protection were not made, and had it done so it would have been subject to no just criticism, yet, on the other hand, it appears it did not care to assume the position of precipitating such immediate failure if arrangements for its protection would be satisfactorily made.

Of course Republic could have withdrawn its funds without saying anything to the bank officials, and permitted events to shape themselves. On the other hand, the officials of the bank are presumed to know its condition, and could have voluntarily turned the Bank over for liquidation before the accounts could be withdrawn.

It is purely speculative to say that the depositors and creditors would have been in a better position at one time than at the other.

It evidently was a matter of sentiment on Republic's part, being an old depositor with the bank, in authorizing its treasurer to propose to the bank that, if some arrangements could be made by which its interests would be safeguarded, its funds would be permitted to remain or be re-deposited. The condition of the bank was not at any time misrepresented to Republic. On the contrary, Republic was fully conversant with its condition, and its knowledge of such condition together with its purpose to withdraw its funds was what brought home to the officials of the bank a realization that they were called upon to deal with a real crisis, with the choice of deferring or avoiding the same by safeguarding Republic's funds in some manner satisfactory to Republic, otherwise to sustain the anticipated consequences by not doing so.

In view of all the facts the question of fraud does not enter into this case in any form.

It may be noted in passing that the funds of Republic remained on deposit until after an agreement providing for security therefor had been drafted under orders from the Bank, submitted to Republic, and except as to the fundamental basis of the agreement, was satisfactory to Republic. The fundamental basis of the agreement was changed, the funds directed to be withdrawn before ratification of the agreement by the bank. The funds were

withdrawn and replaced immediately following the execution of the agreement in form exactly as re-drafted by Republic.

In considering the question whether there is any difference in law between a loan of funds to a bank, and a deposit of funds in a bank, I find I am unable to point out this difference in any better or more convincing and clear language than that used by the court in the case of *Farmers & Merchants State Bank* v. *Consolidated School District No.* 3, 174 Minn. 286, 219 N. W. 163.

I am satisfied the Supreme Court of Ohio will recognize and enunciate this distinction in a proper case.

What was the character of the agreement, that is, whether, when viewed in the light of the apparent construction placed thereon by the language employed therein by the parties, and the facts and circumstances surrounding its execution, it was a loan or a deposit?

A careful reading of the agreement shows that the parties understood the transaction to be and they were dealing with security for deposits to be made by Republic. Nowhere therein is the word "loan" or its equivalent used, but at all times the word "deposit" is used or referred to. At the very outset they recognize what the former relationship each to the other had been, and the future relationship to be that Republic "had heretofore maintained a commercial deposit account * * * and * * * a payroll account * * * and has recently withdrawn all funds in both accounts," and that the bank "considered it would be greatly to its interest that said accounts be renewed * * *." After the execution of the agreement of the relationship of the parties, in every essential respect was exactly as before the deposits were withdrawn; with this difference only, the Republic had security for its deposits.

The parties to this agreement having clearly understood, and the facts and circumstances fully support this understanding, that the funds to be thereafter turned into the bank were to be deposits and not loans, and the agreement and the surrounding fact and circumstances not being susceptible to any other interpretation, we must conclude the same to be deposits and not loans.

What was this crisis? Was it the loss of a depositor, or the loss of this depositor? Was it the loss of the funds on deposit, or the loss of the powerful prestige of this depositor? Counsel say it was "to avoid the loss of prestige, and a very definite probability of a run on the Bank and second, to gain additional funds for the use of the bank." In my opinion it was the loss of prestige of a powerful and influential depositor with resulting consequences, and second, not to gain additional funds for the use of the bank, but the question of funds was of minor importance.

There is no express power conferred by the General Code of Ohio, authorizing a bank to pledge to general depositors its assets as security for deposits. The Legislature of Ohio has provided, however, that a bank may pledge certain of its assets to secure public funds, thereby recognizing banks had no implied power to do so. It would seem if banks had implied power to pledge assets to secure any deposits, there would be greater reason why it should be for public rather than private funds. The implied powers of a bank are limited to such acts which are necessary or usual and incidental to banking business, and any other power must be expressly authorized by statute. Legislative authority to pledge assets to secure public funds is indicative of the legislative opinion that, the act of pledging assets to secure deposit of public as well as private funds is not necessary or usual and incidental to banking business, and that express authority must be conferred by Legislature to pledge its assets as to both private and public funds.

In the case of *Klaustermeyer* v. *Trust Company*, 89 O. S. 142 the character of the transaction, that is, whether a loan or a deposit, was not in question. Counsel and the court treated the transaction as a loan to the bank. While it is true in some instances the court used the word deposit, but not in the sense that the money was placed to Klaustermeyer's checking account and was subject to check at his will and pleasure, but in the sense of handing to the bank the money as a loan. In the instant case the money was placed to Republic's checking account

and was checked against, and at all times treated and handled by Republic and the bank the same as previous banking business between them had been treated and handled.

I am of the opinion that the deposits of Republic after the execution of this agreement were in reality a continuation of the existing deposits. Even if this is not correct I am of the opinion that the law prohibits with equal strength a pledge of assets to secure new private deposits.

I have carefully read and studied all the authorities cited by counsel, and have reached the conclusions indicated, and further, that, even though the pledge of assets as security for private deposits, either new or old, is made in the exercise of good judgment by the directors, and for the purpose of averting an immediate closing of the bank, the same is a preference and against public policy, and that this or no other consideration can excuse the doing of this act against public policy.

Finding and decree in favor of plaintiff.