## FARMERS & MERCHANTS STATE BANK OF OGILVIE, BY A. J. VEIGEL, v. CONSOLIDATED SCHOOL DISTRICT NO. 3, KANABEC COUNTY, AND ANOTHER.[1]

April 13, 1928. ·

No. 26,689.

**Statute permits a state bank to pledge its assets only for deposits of public moneys.**

1. A commercial bank organized under the laws of Minnesota has no power to pledge any of its assets, particularly bills receivable, to secure the repayment of deposits, except as it is given by statute with respect to the deposit of state and municipal funds. As to them the power does not extend to assets other than those specifically authorized to be pledged.

**After insolvency bank's receiver may recover pledged assets or damages without return of deposit.**

2. Where such an unauthorized pledge is made and the bank becomes insolvent, the receiver may recover the assets pledged or damages if they have been converted. That is because the pledge must be considered as in fraud of the rights of creditors of the bank.

**Existing statutes do not restrict deposit of school funds until statutory depository has been selected.**

3. Art. 9, § 12, of the state constitution, requiring that "suitable laws" shall be passed for the safeguarding of state and school funds and that it shall be embezzlement for any public officer to deposit such funds in banks "except in the manner prescribed by law," is not self-executing. What the legislature regards as "suitable laws" have been passed, and they do not restrict the deposit of school funds in banks until a depository has been selected therefor as required by statute.

Banks and Banking, 7 C. J. p. 586 n. 93; p. 736 n. 71.
Constitutional Law, 12 C. J. p. 730 n. 54.
Schools and School Districts, 35 Cyc. p. 979 n. 54.

See note in 45 L.R.A.(N.S.) 950; 51 A. L. R. 313; 3 R. C. L. 419; 1 R. C. L. Supp. 822.

[1]Reported in 219 N. W. 163.

Defendants appealed from an order of the district court for Kanabec county, Stolberg, J. sustaining a demurrer to both the answer and a counterclaim.   Affirmed.

*George L. Angstman* and *A. H. Angstman,* for appellants.

*D. F. Nordstrom,* for respondent.

STONE, J.

Trover for promissory notes of the alleged value of upwards of $8,000.   Defendants appeal from an order sustaining a general demurrer to the answer challenging the sufficiency of both the attempted defense and a counterclaim.

The Farmers & Merchants State Bank of Ogilvie has been closed and is being wound up by Mr. Veigel as commissioner of banks. To the charge that its notes were converted by defendants in December, 1926, the defense is that the paper was then pledged with defendant Hodgins as treasurer of his codefendant, the school district, to secure a deposit of school district funds.   The counterclaim alleges a deposit of $10,625.45 in the defunct bank; that it was made without the bank's having been designated as a depository; and that it was not required to furnish a depository bond.   In consequence the claim is, the deposit was unlawful and constituted the bank a trustee ex maleficio.

1.   The main target of the demurrer is the action of the bank in securing a deposit of public funds with assets other than those for the pledging of which there is explicit statutory authority.   By L. 1925, p. 168, c. 173, 1 Mason Minn. St. §§ 1973-1 to 1973-3, banks and trust companies which have been "designated as a depository of * * * school district funds, as provided by law," may, in lieu of the usual surety bond secure such deposits by collateral of the kind there specified, most of it being within the class of "authorized investments for savings banks."   There are two reasons why that statute does not cover this case.   The bank was never legally designated as a depository of school district funds, and the notes which it pledged were not a security authorized by statute to be pledged.

The power generally to give security for deposits has not been granted expressly to state banks, but the right to secure municipal

deposits has been in the limited fashion just indicated. Similar provision is made for the securing of state deposits. G. S. 1923, § 107. So, if the power exists to secure even public deposits otherwise than as specially authorized by these statutes, it must be found in the implied powers of state banks. Their general statutory grant of power is as follows:

"In addition to the inherent and granted powers of corporations in general, such banks shall have * * * all such powers as shall be necessary to carry on the business of banking by discounting bills, notes, and other evidences of debt, by receiving deposits, by buying and selling gold and silver bullion, foreign coin, promissory notes, mortgages, and other evidences of debt, and foreign and inland bills of exchange, by lending money on real and personal securities and receiving interest on any of the same in advance, and by exercising all the usual and incidental powers and privileges belonging to such business." G. S. 1923, § 7660.

The "inherent and granted powers of corporations in general" thus given to banks include only the peculiar functions necessary to enable a corporation to exist as such. They include the power of succession, to sue and be sued, to have and use a common seal, and to select officers and make and amend by-laws. G. S. 1923, § 7447, confers these general powers. Its grant (subd. 4) of the right to hold, "incumber, and convey" property is confined to "real and personal property necessary to the purposes" of the corporation. So, as applied to banks, that general grant must be held within the proper limits of banking functions.

Turning to § 7660, we find that the implied powers of a bank are limited to those which are "necessary" or "usual and incidental" to the "business." So, if a power is not expressly granted and is neither necessary nor usual and incidental to the "business," a Minnesota state bank does not possess it. The powers of a corporation are granted for the *proper* carrying on of its business. The more limited and special the scope of that business the narrower will be the reach of both express and implied powers. The latter, in the case of a bank, are confined to those "required to meet all the legiti-

mate demands of the authorized business" and to enable it "to conduct its affairs, within the scope of its charter, safely and prudently." Western Nat. Bank v. Armstrong, 152 U. S. 346, 351, 14 S. Ct. 572, 38 L. ed. 470.

Commercial banks have become institutions of deposit, discount, exchange and (in the case of national banks) circulation. Originally they were for deposit only and received for safekeeping plate, bullion, coin and the like. Oulton v. German Sav. & L. Soc. 84 U. S. 109, 21 L. ed. 618. Money and commercial paper have evolved them from that primitive form into what they now are. At no period of the evolution would it have been good practice, or consistent with their duty to all depositors, for banks to pledge assets to secure some depositors. In the initial stage, when deposits were received for safekeeping and so kept intact, it was obviously impossible. Every depositor was entitled to the return of his own on demand. That became first impractical and then impossible as money became more and more the subject of deposit and credit the vehicle of exchange. The relation of debtor and creditor succeeded that of bailor and bailee, but the general purpose remained the same. The depositor's right was preserved to get back his own by equivalent value (with interest in the case of time deposits, a relatively modern development) without preference or priority to others. The primary duty of a banker is to protect and maintain that right unimpaired. The plainest public policy demands that it shall be so maintained. Therefore anything which unavoidably and in the usual course of things tends to its impairment is contrary to public policy.

The pledge of assets to secure bank deposits falls automatically within that condemnation. At the outset it evinces a willingness to favor the secured depositor at the expense of those less favored. Then it actually sets apart for his exclusive benefit part of a fund to no part of which he should have any such right, and in every part of which the other depositors should have the same right as himself. It is in derogation of that fair and equal treatment of all depositors which is fundamental in the ethics of banking. A conclusive test is that no bank can make a practice of securing deposits

by pledging assets and live. A few such transactions made known to its clientéle would put any bank out of business. The practice would properly be taken to show that the institution was intrinsically so little deserving of deposits that resort to the too attractive lure of collateral was compelled by adverse circumstances. No bank could long survive such an exposé. The very offer of collateral for his deposit would send any discreet and informed depositor elsewhere. So, if the practice of securing deposits by pledge of assets is resorted to at all, it must be done secretly. That is enough to condemn it. Any power the exercise of which will not stand the light of publicity cannot be allowed to banks. The argument that a bank has as an implied power, one that if used openly is ruinous and must be resorted to clandestinely if at all, refutes itself. Banks are intended above all else to be the dependable agents of thrift and commerce. To that end express powers have been conferred on them. It would violate all rules of construction to construe into their implied powers one that would go so far to defeat the purpose of the express powers. Accordingly we hold that the power to pledge its assets to secure deposits (otherwise than as given by statute in the case of public moneys) is not possessed by a bank organized under the laws of Minnesota.

In that we are in accord with Commercial Bank & Tr. Co. v. Citizens Tr. & Guar. Co. 153 Ky. 566, 156 S. W. 160, 45 L.R.A.(N.S.) 950, Ann. Cas. 1915C, 166; and Divide County v. Baird, 55 N. D. ——, 212 N. W. 236, annotated 51 A. L. R. 296, 313. There is much authority to the contrary (see 12 Minn. Law Rev. 407), all of which, so far as it has come to our attention, we have examined attentively. The whole decision in Richards v. Osceola Bank, 79 Iowa, 707, 712, 45 N. W. 294 (followed in Andrew v. Odebolt Sav. Bank, 203 Iowa, 1335, 214 N. W. 559) is in the statement that if the banker had authority to give the bond in question as security, "he surely was authorized to give the collaterals." In McFerson v. National Sur. Co. 72 Colo. 482, 483, 212 P. 489, the statement appears, with no reasons assigned in support, that "there is no question that a bank, in order to secure deposits, may give security for them." In Ward v. Johnson, 95 Ill. 215, 239, decision was upon the ground that

inasmuch as a private corporation generally has implied power to contract debts like an individual, it follows that whenever it is necessary or convenient in furtherance of its legitimate business to contract a debt, the payment of it may be secured in any appropriate manner. The holding was that a deposit is simply a loan, and the power to borrow money carries the power to secure its payment by collateral. Expressly that was the ground of decision in Ahl v. Rhoads, 84 Pa. 319, 324, and Williams v. Hall, —— Ariz. ——, 249 P. 755, 758. See also Page Tr. Co. v. Rose, 192 N. C. 673, 135 S. E. 795; Cameron v. Christy, 286 Pa. 405, 133 A. 551; Ainsworth v. Kruger, —— Mont. ——, 260 P. 1055; U. S. F. & G. Co. v. Village of Bassfield, —— Miss. ——, 114 So. 26.

The essential premise of that opinion is that with respect to the power to give security bank deposits and bank borrowings are alike. That seems to us unsound. Bank deposits and bank borrowings are alike in but the one respect that one result of each is the relation of debtor and creditor. In every other respect the two operations are not only different but in complete antithesis. Deposits are attracted by the strength of a bank, whereas its borrowings are compelled by weakness or other adverse circumstance. (The borrowing of money has been said to be "so much out of the course of ordinary and legitimate banking as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money." Western Nat. Bank v. Armstrong, 152 U. S. 346, 351, 14 S. Ct. 572, 38 L. ed. 470.) Large deposits signify health, and large borrowings banking disease. Springing from opposite causes, the two by their existence signify opposite conditions—deposits the normal, and borrowings the abnormal. Moreover the antithesis holds to the end, for the withdrawal of a deposit is a loss, whereas the payment of a loan is a gain. Deposits continued and increased evidence banking success, whereas borrowings continued and increased portend failure. Save in the relation of debtor and creditor common to both, the two are different in their every incident—not only different but opposed in origin, in purpose, and in effect. How it comes then that the obvious truth that a bank may pledge collateral for borrowed money can be used

to sustain the same power in the case of deposits we cannot under-stand. The former is clearly necessary, usual and incidental, where-as the latter is neither necessary, usual or incidental, but is posi-tively dangerous. Therefore, we repeat, we consider it not pos-sessed by any state bank in Minnesota. It is not an express power and clearly not included among those implied.

L. 1927, p. 379, c. 257, 2 Mason Minn. St. §§ 7699-14 to 7699-19, has now established that as statutory law. It prohibits any "lien upon or charge against" the assets of a bank, except to secure public de-posits or "money borrowed in good faith from other banks or trust companies." There is a proviso that the statute shall not be con-strued to permit the use of any assets as security for public funds "other than the securities made eligible by law for that purpose." While enacted subsequent to the transaction here in question, the statute but expresses plain public policy. The question is not here involved of a depositor's being secured by a personal bond or in some other manner that does not encumber the assets of the bank to the prejudice of any other creditor. Such a case was Leonard Co-op. Creamery Assn. v. First State Bank, 168 Minn. 28, 209 N. W. 631.

2. The first argument in support of the counterclaim is that, even though the pledge was ultra vires, neither the bank nor its receiver can disaffirm without returning or offering to return the deposit. The deposit seems to have been made sometime before the pledge, but it may be assumed that it would not have been con-tinued without the collateral. It remains that the pledge of bills receivable was in derogation of the rights of creditors generally and in effect a fraud upon them. That being the case, the receiver of the bank, as their representative, may disaffirm without return of the deposit. Marin v. Calmenson, 158 Minn. 282, 197 N. W. 262. The precise point was made and ruled in favor of the receiver in Divide County v. Baird, 55 N. D. ——, 212 N. W. 236, 51 A. L. R. 296. Were it otherwise, the right of bank creditors to share in the assets unaffected by unlawful pledges thereof to favored depositors would be of little value.

3. The deposit of the funds of defendant school district were not made in violation of either constitutional or statutory law in such fashion as to make the bank a trustee ex maleficio or otherwise. Art. 9, § 12, of the state constitution requires that "suitable laws shall be passed by the legislature for the safekeeping * * * of the state and school funds" and provides that if any of the officers charged with their safekeeping shall deposit such funds "in banks * * * except in the manner prescribed by law, every such act shall be and constitute an embezzlement." That provision is not self-executing. It is directed to the legislature, which must enact the "suitable laws" required. As to the *suitability* of the resulting statutes, the legislative judgment is final. They are found in G. S. 1923, §§ 2833, 2834, and 2836. Section 2833 makes school district treasurers "responsible for all moneys of the district." Section 2834 requires bonds to safeguard that responsibility. Section 2836 authorizes the officers of both common and independent school districts "in their discretion" to select and designate depositories for school district moneys. "Thereupon," the statute provides, the treasurer may be authorized "to deposit all or any part of the school district's money in such bank or banks" so selected. Section 2837 exempts the school treasurer and the sureties on his bond from liability for the loss of any funds deposited in any bank legally designated as a depository which arises from the failure, bankruptcy or other act of such bank. A parallel situation exists with respect to the funds of other municipalities. City of Cloquet v. N. W. State Bank, 172 Minn. 324, 215 N. W. 174. Therefore the "suitable laws" for the safeguarding of school funds do not restrict deposits by school district treasurers until a depository has been designated pursuant to § 2836 and the deposit required accordingly therein. In the instant case it does not appear that any depository was ever so designated. Hence, under no tenable theory, does the answer disclose any such violation of law as could subject the bank to the obligations of a trustee.

Order affirmed.

HILTON, J. took no part.