157 So. 439

## DAY v. FARMERS' & MERCHANTS' BANK OF HARTSELLE.

### 8 Div. 560.

Supreme Court of Alabama.

Nov. 1, 1934.

[1] Ante, p. 178.

E. W. Godbey, of Decatur, for appellant.

374

A. J. Harris and Norman W. Harris, both of Decatur, for appellee.

KNIGHT, Justice.

This cause appears in this court on appeal by J. L. Day from a judgment rendered against him in the circuit court of Morgan county in favor of the Farmers' & Merchants' Bank of Hartselle, suing for the use of E. B. Soper, as receiver of the First National Bank of Hartselle.

The basis of the suit was a promissory note executed to the said Farmers' & Merchants' Bank by the appellant in the sum of $8,200, and payable on demand.

A brief statement of the salient facts of the case is essential to a proper understanding of the conclusion reached by us on the appeal.

The Farmers' & Merchants' Bank was a banking institution doing business in the town of Hartselle on April 8, 1929, the day on which the note sued on was executed, and thereafter continued in said business until some time in the month of May, 1930, when, by resolution of its board of directors, it was placed in the hands of the superintendent of banks for liquidation. Thereafter, during the same month, the First National Bank of Hartselle took over the assets of said Farmers' & Merchants' Bank, under some arrangement with the superintendent of banks, and the directors of said bank. Later, the First National Bank was placed by the comptroller of the currency in the hands of Soper, as receiver. Among the papers and properties of the Farmers' & Merchants' Bank taken over by the First National Bank was the note in question.

The facts relating to the execution of the note, so far as disclosed by the bill of exceptions, are substantially as follows, quoting from the testimony of P. W. Barclift, the vice president and general manager of the Farmers' & Merchants' Bank: "The way J. L. Day came to execute the note was in this wise: He came in the bank one morning before the bank opened, and I said, 'J. L., I want you to do me a little favor,' and he said, 'all right, P. W., I will do anything I can to help you out.' I told him I wanted him to sign about an eight thousand dollar note.' He said 'That is a pretty big amount,' and I said, 'yes, it is, but if you will do it, I will guarantee that you will never have any trouble over it.' And he said, 'All right.' He signed it, and he didn't ask me who it was for or what it was for or anything about it. He never got anything on that note. The bank made him no advance. There wasn't anything said about securing anybody else as to the debt at all. There was never anything said about anybody getting anything for or on account of his signing that note. J. L. Day never asked me any questions, only

saying it was a pretty big note. I never told him anything to that effect, I told him I would see that the note was taken care of pretty soon. I thought at that time I could do it.".

After the note was executed, it was used by Barclift, who was the general manager, as before stated, of the bank, in taking up a certain note of the Williams Warehouse Company, which had been executed to the said Farmers' & Merchants' Bank, and which was still owned by the bank. It further appears without dispute that Mr. Barclift had a son, Ray Barclift, and that Mr. Williams, who did business under the name of Williams Warehouse Company, put up the money for this son to do business on. Ray Barclift was a son-in-law of Mr. Williams. The warehouse company note was executed to the bank for the benefit of Ray Barclift, the son of P. W. Barclift, and son-in-law of the maker of the note. It appears without dispute that Barclift, the father, paid the interest on the warehouse company note, which Williams had executed to the bank. To further quote the language of Mr. P. W. Barclift, "I paid the interest on that note. This note was made away back yonder for my son, Ray Barclift, and Mr. Williams put the money up, and I loaned Mr. Williams the money, and I generally paid that interest myself."

The appellant's note was in an amount in excess of the amount due on the warehouse company note by $84.44. Barclift placed that difference on deposit to his own credit in the Farmers' & Merchants' Bank.

Mr. Barclift, in answer to the following question: "What did you want with this note [Day note]?" testified: "Take up the Williams Warehouse Company [note]; reduce his bill. The Williams Warehouse Company was not an incorporated concern, and Mr. Williams' personal indebtedness together with the warehouse made him over the limit. I wanted to reduce him under the limit. I told Day I wanted him to do me a little favor."

At another point on his examination as a witness, Mr. Barclift testified: "I don't think the defendant was informed that P. W. Williams was to indorse it [Day note]. Nothing was said about what was to become of the note. The note was just an accommodation to me for a short time. A demand note. J. L. Day had nothing to do with paying the interest shown by the credits on the note."

The defendant filed a plea of the general issue and other pleas setting up the defense that the note was without consideration. The

contention of the defendant was that the note was executed for the accommodation of the Farmers' & Merchants' Bank, and was without consideration of any kind.

To the pleas setting up want of consideration, the plaintiff filed a general denial, and also a special replication. This special replication of the plaintiff sought to set up an estoppel against the defendant. This replication appears in the report of the case.

The defendant filed numerous grounds of demurrer to the plaintiff's special replication, which were overruled by the court.

The evidence, fairly considered, shows without conflict of any kind that the note sued on was executed for the accommodation of the said P. W. Barclift, personally, and not for the accommodation of the Farmers' & Merchants' Bank; that it was so used by Barclift; and that he personally was benefited thereby. One cannot read the evidence in this case and reach any other conclusion but that Barclift was the party intended to be accommodated and not the bank.

"The accommodated party is he to whom the credit of the accommodation party is loaned, and is not necessarily the payee, since the inquiry always is as to whom did the maker of the paper loan his credit as a matter of fact. And the fact that one derives some incidental benefit from the paper will not make it accommodation paper as to him.

"And an instrument signed by one for the accommodation of another is accommodation paper, altough the party for whose accommodation it was signed is not himself a party to the instrument." 8 Corpus Juris 254; First National Bank of Tulsa v. Boxley, 129 Okl. 159, 264 P. 184, 64 A. L. R. 588; Thom v. Kibbee, 62 N. J. Law, 753, 42 A. 729.

Our statute, section 9055 of the Code, thus defines an accommodation party: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

■■ We are of the opinion, and so hold, that the evidence showed without conflict that, as between the defendant and the said P. W. Barclift, the note sued on was without consideration, and that if the Farmers' &

Merchants' Bank had, in fact, acquired the note for value, this fact should have been brought forward by proper replication. Such was our holding in the case of Tatum v. Commercial Bank & Trust Co., 185 Ala. 249, 64 So. 561. In that case we held that under section 4984 of the Code of 1907, the progenitor of our present Code section 9055, the accommodation maker is liable to a holder for value notwithstanding the holder knew him to be only an accommodation party.

The defense set up in pleas 4 and 5 could only be met by a proper averment that the Farmers' & Merchants' Bank acquired the note for value.

There was no replication to pleas 4 and 5 setting up that the Farmers' & Merchants' Bank acquired the note for value. If the plaintiff desired to try the case on the theory that the Farmers' & Merchants' Bank acquired the note for value, then this fact should have been brought forward by proper replication as above indicated.

This then brings us down to a consideration of plaintiff's replication 2. It will be noted that this replication attempts to set up an estoppel against the defendant, and the defense asserted in his pleas 4 and 5. The fraud attempted to be charged against the defendant is based upon a deception practiced upon the state examiner of banks as to the true condition of the Farmers' & Merchants' Bank.

Evidently the pleader had in mind our case of Jackson, Superintendent of Banks v. Lancaster, 213 Ala. 97, 104 So. 19, 21, when the replication was prepared. In the Lancaster Case there was no element of fraud presented, as pointed out by Mr. Justice Sayre, and the learned justice grounded his opinion upon our case of Hood v. Robbins & Smith, 98 Ala. 484, 13 So. 574, 575, wherein it was observed: "As between the original parties to the note, those who are fully advised of all the circumstances attending its making and indorsement are not regarded as innocent bona fide purchasers. The payee of a note made purely for his accommodation cannot maintain an action against the drawer, nor against the indorser who indorses it purely as an accommodation for the drawer, there being no consideration moving to or from the payee."

In the Lancaster Case, supra, we find the following observation:

"Fraud apart, it is not perceived that the consideration for an indorsement such, for example, as is found in State v. Hills [94 Ohio St. 171, 113 N. E. 1045, L. R. A. 1917B, 684], supra, differs from that about which this court was concerned in Hood v. Robbins [98 Ala. 484, 13 So. 574], supra. In all of them the court was considering an indorsement that affected the general credit of the bank, not a case in which a note for indorsement was given to protect the bank against loss on a particular obligation which did not materially affect its solvency or general credit. If it be conceded that the theory of estoppel shown by these cases, whether involving fraud or not, may be adopted by this court without overturning the principle of Hood v. Robbins, still the fact is that in this case the evidence failed to support either application of the doctrine. There was proof that some seven or eight months after the indorsement in question the bank failed, but that fact alone hardly sufficed to bring the case under the rule of the authorities cited by appellant. There was no evidence going to show that appellee was a party to any fraud that may have affected the conduct of Gaddis, nor was it shown that the bank was in such financial condition—of which appellee had notice—that the transaction would contribute materially to its solvency or general credit. In the circumstances thus appearing, it is considered best to defer the question raised by this last-noted contention to some occasion when the issues and the evidence may demand its decision."

■ Generally speaking, the receiver of a defunct bank, appointed to wind up its affairs and make due distribution of its assets, stands in the shoes of the bank, and has no greater rights, nor does he stand in any more favored position than the bank he represents. Jackson, Sup't of Banks v. Lancaster, supra; Rankin, Receiver, etc., v. City Nat. Bank of Kansas City, 208 U. S. 541, 28 S. Ct. 346, 52 L. Ed. 610 (in which the opinion was prepared by Mr. Justice Holmes); Chicago Title & Trust Co. v. Brady, 165 Mo. 197, 65 S. W. 303. However, by a long line of well-considered cases, it has been held that where notes or other securities have been executed to a bank for the purpose of making an appearance of assets, so as to deceive the examiner and enable the bank to continue business, although the circumstances may have been such that the bank itself could not have collected the securities, it has been held that the receiver, representing the creditors, could maintain the action, and the makers would be estopped, upon the insolvency of the bank, to allege want of consideration. Hurd v. Kelly, 78 N. Y. 588, 34 Am. Rep. 567; Best v. Thiel, 79 N. Y. 15; Sickles

v. Herold, 149 N. Y. 332, 43 N. E. 852; State Bank of Pittsburg v. Kirk, 216 Pa. 452, 65 A. 932; People's Bank v. Stroud, 223 Pa. 33, 72 A. 341; Dominion Trust Co. v. Ridall, 249 Pa. 122, 94 A. 464; Lyons v. Benney, 230 Pa. 117, 79 A. 250; Pauly v. O'Brien (C. C. 1895) 69 F. 460; Federal Reserve Bank v. Crothers (C. C. A. 4th, 1923) 289 F. 777; Murphy v. Gumaer (1902) 18 Colo. App. 183, 70 P. 800; Golden v. Cervenka, 278 Ill. 409, 116 N. E. 273; Prudential Trust Co. v. Moore, 245 Mass. 311, 139 N. E. 645; German-American Finance Corp. v. Merchants & Manufacturers State Bank of Minneapolis et al., 177 Minn. 529, 225 N. W. 891, 64 A. L. R. 582; Farmers' & Merchants' State Bank v. Consolidated School District, 174 Minn. 286, 219 N. W. 163; Divide County v. Baird, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296; Harrington v. Connor, 51 Neb. 214, 70 N. W. 911; Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903; Putnam v. Chase, 106 Or. 440, 212 P. 365; Arthur v. Brown, 91 S. C. 316, 74 S. E. 652; Moore v. Kildall, 111 Wash. 504, 191 P. 394; Allen v. Hay, 64 Can. S. C. 76, 14 B. R. C. 649, 69 D. L. R. 193; Runner v. Dwiggins, 147 Ind. 238, 46 N. E. 580, 36 L. R. A. 645; Northwestern Mut. Life Ins. Co. v. Kidder, 162 Ind. 382, 70 N. E. 489, 66 L. R. A. 89, 1 Ann. Cas. 509; Pittsburg Carbon Co. v. McMillin, 119 N. Y. 46, 23 N. E. 530, 7 L. R. A. 46; Ward v. Petrie, 157 N. Y. 301, 51 N. E. 1002, 68 Am. St. Rep. 790.

In 23 R. C. L. at page 116, § 124, in commenting upon the rights of a receiver, the author observes: "While, speaking in general terms, the receiver is a trustee for creditors, and for stockholders as well, in respect to their interests in the property and assets of the corporation, resting upon the fact that they are or may be the beneficiaries of the fund which he collects, yet he stands, in a suit against the stockholders, as a representative of the corporation, taking the rights of the corporation, such as could have been asserted in its name, and on that basis only can he litigate. That is, he succeeds to the title and rights of action of the corporation itself, and takes all such rights as the corporation itself originally had, and may enforce them by the same legal remedies. This rule is, however, subject to the exception that the receiver so far represents the general creditors that he may avoid transactions in fraud of their rights. In such a case he is a trustee for both, and as trustee for the creditors may maintain and defend actions which the corporation could not."

The reason underlying the exception, which permits a receiver, representing the creditors, to maintain actions to recover upon notes or other securities executed to the bank for the purpose of making an appearance of assets, so as to deceive the examiner and enable the bank to continue business, although the circumstances may have been such that the bank itself could not have collected on the securities, is so cogent and compelling to our mind, and is so in consonance with the spirit of morality, common honesty, and justice that we find ourselves in full accord and sympathy therewith.

We are, therefore, of the opinion that in a proper case, under proper pleading, a receiver may enforce payment of notes or securities executed to a bank for the purpose of making an appearance of assets so as to deceive a bank examiner and enable the bank to continue business, although the circumstances may have been such that the bank itself could not have recovered upon such securities.

But the plaintiff's special replication falls short of presenting such a case, viewed as a replication setting up an estoppel against the defendant to assert the defense of want of consideration. There is no averment in the replication that the note was executed for the purpose of making an appearance of assets, so as to deceive the examiner and enable the bank to continue business. The replication may give rise to some slight inference to that effect, but the facts relied upon to show that the notes were executed for the purpose of making the appearance of assets so as to deceive the examiner and enable the bank to continue business should have been stated and not left to rest in inference. Price Hardware Co. v. Meyer, 224 Ala. 35, 138 So. 543; Duckworth v. Duckworth's Adm'r, 35 Ala. 70, 74, 75.

Nor does the replication aver that the Farmers' & Merchants' Bank was ever insolvent or that the creditors have lost a dollar, or stand to lose one dime from the transaction complained of. It is true that this replication avers "that after the examination (by the bank examiner) the note remained in the bank as an asset thereof and deposits were made in said Farmers and Merchants Bank until it failed or was taken over by the superintendent of banks at the request of the board of directors of said Farmers and Merchants Bank." The averment is in the alternative. As against the pleader, the sufficiency of the pleading must be tested by its weakest alternative averment. So testing the averment, the same falls far short of averring that the bank be-

came or was insolvent, or that the creditors have lost, or stand the remotest chance of losing, a dime.

The replication was subject to one or more grounds of the defendant's demurrer, and the court erred in overruling the same.

A few other questions are presented by the record, but in view of our conclusion as above expressed, such questions will probably not arise on another trial and we feel it would be useless to consider the same.

For the error in overruling defendant's demurrer to plaintiff's special replication, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.