# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-2551

_____

Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust,

*Appellee,*

v.

BMO Harris Bank National Association, as successor to M&I Marshall and Ilsley Bank,

*Appellant.*

------------------------------

The Bank Policy Institute; Securities Industry and Financial Markets Association; Chamber of Commerce of the United States of America,

*Amici on Behalf of Appellant(s),*

National Association of Federal Equity Receivers,

*Amicus on Behalf of Appellee(s).*

_____

No. 23-2632

_____

Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust,

*Appellant,*

v.

BMO Harris Bank National Association, as successor to M&I Marshall and Ilsley Bank,

*Appellee.*

_____

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: May 9, 2024
Filed: September 12, 2024 (Amended: September 12, 2024)

_____

Before COLLOTON, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

COLLOTON, Chief Judge.

This appeal is the latest in a series of disputes arising from Thomas Petters's multibillion-dollar Ponzi scheme. When the scheme collapsed, a federal district court placed one of his companies, Petters Company, Inc. (PCI), in a receivership and appointed Douglas Kelley as a receiver. PCI then filed for bankruptcy, and Kelley was appointed trustee of the bankruptcy estate.

As trustee, Kelley filed an adversary proceeding in the bankruptcy court against BMO Harris as successor-in-interest to M&I Bank, alleging that M&I aided and abetted the Ponzi scheme. BMO raised the equitable defense of *in pari delicto* on the ground that the debtor, PCI, bore equal or greater responsibility for its injury. The bankruptcy court and the district court concluded that the defense was unavailable in light of the receivership. The case proceeded to trial, and a jury found that M&I aided and abetted PCI officers' breach of fiduciary duty and awarded Kelley more than $500 million in damages.

BMO appeals and raises numerous contentions regarding available defenses, sufficiency of the evidence, jury instructions, and damages. Because we conclude that the doctrine of *in pari delicto* barred Kelley's action against BMO, we reverse.

I.

Petters created PCI to facilitate his Ponzi scheme. He represented to investors that PCI purchased consumer electronics from wholesalers and resold the products to retailers. In reality, Petters rerouted much of the money to himself and his fellow fraudsters using PCI's accounts at M&I Bank.

The scheme collapsed in 2008 when Petters was arrested. A jury found him guilty of various fraud offenses, and the district court sentenced him to 50 years' imprisonment. *See United States v. Petters*, 663 F.3d 375 (8th Cir. 2011). PCI pleaded guilty to wire fraud, conspiracy to commit mail and wire fraud, and conspiracy to commit money laundering.

At the federal government's request, a federal district court placed PCI into a receivership and appointed Douglas Kelley as the receiver under 18 U.S.C. § 1345(a)(2)(B)(ii). The district court authorized him to "fil[e] any bankruptcy petitions for [PCI] to protect and preserve [its] assets," provided that "bankruptcy cases so commenced by the Receiver shall during their pendency be governed by and administered pursuant to the requirements of the U.S. Bankruptcy Code" and "the applicable Federal Rules of Bankruptcy Procedure." Five days after his appointment, Kelley filed for bankruptcy on PCI's behalf. The bankruptcy court appointed Kelley to be the bankruptcy trustee.

As the trustee, Kelley filed an adversary proceeding against BMO in the bankruptcy court. He brought various claims under Minnesota law, including a claim for aiding and abetting breach of fiduciary duty. Kelley alleged that M&I employees

knew about the Ponzi scheme and gave PCI special treatment that helped the scheme avoid detection. For example, Kelley alleged that bank employees ignored money-laundering alerts from the bank's account-monitoring software and allowed PCI to overdraft millions of dollars, contrary to the bank's policies.

BMO moved for summary judgment. The bank argued that under the doctrine of *in pari delicto*, PCI could not recover based on M&I's alleged wrongdoing because PCI was itself a wrongdoer of equal or greater fault. The bankruptcy court ruled that the defense was unavailable. The court reasoned that under Minnesota law, "PCI had become a receivership entity" and thus was no longer bound by its officers' previous fraudulent acts. In the alternative, the court concluded that genuine issues of fact existed as to the parties' respective fault. The district court denied BMO's request for interlocutory review of the decision. The court conducted its own review of Minnesota law and determined that there were no substantial grounds for a difference of opinion on whether the defense was inapplicable in light of PCI's status as a receivership.

At trial, Kelley and BMO cross-moved for judgment as a matter of law on BMO's *in pari delicto* defense. The district court granted Kelley's motion and denied BMO's motion because it concluded that BMO had "no valid factual or legal basis" to advance the defense.

The jury found BMO liable for aiding and abetting breach of fiduciary duty. The jury awarded Kelley $484,209,716 in compensatory damages and $79,533,392 in punitive damages. After trial, BMO renewed its motion for judgment as a matter of law, arguing again that *in pari delicto* barred Kelley's suit. The court denied the motion, and BMO appeals. We review the district court's denial of an equitable defense for abuse of discretion; an error of law is an abuse of discretion. *See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 343 (8th Cir. 2018); *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 737 (8th Cir. 2015).

II.

The equitable defense of *in pari delicto* embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing. *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005). In Minnesota, the defense of *in pari delicto* is "appropriately applied to bar recovery" when the plaintiff's "fraud was no less than that of" the defendant. *State ex rel. Head v. AAMCO Automatic Transmissions, Inc.*, 199 N.W.2d 444, 448 (Minn. 1972). BMO argues that even assuming Kelley's allegations are true, PCI orchestrated the scheme and is necessarily more culpable—or at least, no less culpable—than the bank. On that view, if PCI had sued the bank in a Minnesota court, then BMO would have been entitled to prevail on the defense of *in pari delicto*.

But Kelley, as receiver-turned-trustee, brought this claim in an adversary proceeding in bankruptcy court. A trustee in bankruptcy stands in the shoes of the debtor. *Stumpf v. Albracht*, 982 F.2d 275, 277 (8th Cir. 1992). The defense of *in pari delicto* is thus available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor. *Grassmueck*, 402 F.3d at 836. State law governs whether the defense could have been raised against the debtor. *See id.* at 837. The parties debate how Minnesota law on receiverships affects this proceeding.

A receiver is a "disinterested person appointed by a court . . . for the protection or collection of property that is the subject of diverse claims." *Receiver*, Black's Law Dictionary (12th ed. 2024). A federal district court may in the exercise of its equitable powers appoint a receiver to "take control, custody, or management of property that is involved in or is likely to become involved in litigation for the purpose of preserving the property . . . and undertaking any other appropriate action with regard to the property pending its final disposition by the suit." 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*

§ 2981 (3d ed. 2024); *see Gordon v. Washington*, 295 U.S. 30, 37 (1935). Although Kelley was appointed by a federal court, state law governs a federal receiver's rights in a state-law cause of action. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83, 88 (1994); *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 n.11 (5th Cir. 2012) (per curiam).

A common-law tradition recognizes a receiver's dual role as one who "represents the creditors as well as the shareholders, and holds the property for the benefit of both." *Franklin Nat'l Bank v. Whitehead*, 49 N.E. 592, 599 (Ind. 1898); *see also Divide County v. Baird*, 212 N.W. 236, 242-43 (N.D. 1926)*; Lyons v. Benney*, 79 A. 250, 251 (Pa. 1911). Relying on that body of law, Minnesota decisions have concluded that a receiver represents the rights of creditors of the receivership entity. *See German-Am. Fin. Corp. v. Merchs.' & Mfrs.' State Bank of Minneapolis*, 225 N.W. 891, 893 (Minn. 1929); *Farmers' & Merchs.' State Bank of Ogilvie v. Consol. Sch. Dist. No. 3*, 219 N.W. 163, 166 (Minn. 1928). Because a "receiver represents the rights of creditors," the Minnesota Supreme Court has ruled, he "is not bound by the fraudulent acts of a former officer of the corporation." *Magnusson v. Am. Allied Ins.*, 189 N.W.2d 28, 33 (Minn. 1971); *see Bonhiver v. Graff*, 248 N.W.2d 291, 296-97 (Minn. 1976). So "when an act has been done in fraud of the rights of the creditors of the insolvent corporation[,] the receiver may sue for their benefit, even though the defense set up might be valid as against the corporation itself." *German-Am. Fin.*, 225 N.W. at 893.

The parties dispute whether these decisions mean that a receiver, acting on behalf of creditors, may avoid the defense of *in pari delicto* even when he brings a claim that belongs to the corporate entity. Even assuming that Kelley has the better reading of Minnesota law on this point, Kelley is acting in this case as a bankruptcy trustee, not as a receiver. A bankruptcy trustee steps into the shoes of the debtor and is subject to any defenses that could be raised against the debtor, including the defense of *in pari delicto*. *Grassmueck*, 402 F.3d at 836.

Kelley maintains that he stepped into the shoes of a "cleansed" receivership entity that is no longer bound by its prior wrongdoing. We are not convinced that Minnesota law "cleanses" an entity that is placed in receivership. The Minnesota decisions in *German-American Finance*, *Magnusson*, and *Bonhiver* speak only in terms of the *receiver* and what defenses are available against a receiver. That a receiver is not bound by a receivership entity's fraudulent acts, however, does not establish that the *entity* is "cleansed" of any prior wrongdoing.

Under Minnesota law, the appointment of a receiver does not change the receivership entity. A receivership changes only the corporation's management. *Nw. Tr. Co. v. St. Paul S. Elec. Ry.*, 225 N.W. 919, 920 (Minn. 1929); *see* Minn. Stat. § 576.21(p)-(q). Kelley-as-receiver thus had custody and control over all of PCI's assets, including its causes of action. Under the Minnesota decisions, he could have pursued claims in Minnesota court, on behalf of creditors, as a receiver who was unconstrained by the fraudulent acts of PCI's officers. His appointment as receiver, however, did not change PCI, which remained a wrongdoer.

PCI's management changed again when Kelley-as-receiver filed for bankruptcy on behalf of the entity. At that point, the bankruptcy estate was created. *See* 11 U.S.C. § 541(a). The estate included all legal or equitable interests of the debtor in property as of the commencement of the case. *Id.* § 541(a)(1). Kelley-as-receiver transferred custody of all of PCI's assets—including its causes of action—to "the duly-appointed Chapter 11 Trustee." Once he did so, Kelley-as-receiver no longer controlled PCI's assets and thus had no claims to bring. PCI's claims became part of the bankruptcy estate and belonged to the bankruptcy trustee. *See Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*, 48 F.4th 896, 898-99 (8th Cir. 2022).

In this proceeding, bankruptcy law governs the powers of the trustee and defines the property of the bankruptcy estate. 11 U.S.C. §§ 323, 541, 1106. So once Kelley transferred PCI's claims to the estate, bankruptcy law governed his ability to

bring PCI's claims as the trustee. And in bankruptcy, the trustee is "subject to any equitable or legal defenses that could have been raised against the debtor." *Grassmueck*, 402 F.3d at 836. PCI is the debtor; the receiver is not involved in the bankruptcy proceeding. If PCI had sued BMO in a Minnesota court, the defense of *in pari delicto* would have been available. BMO thus should have been able to raise the defense against Kelley as the bankruptcy trustee.

Kelley argues that allowing BMO to raise the defense of *in pari delicto* in the adversary proceeding would revive a defense that Minnesota law had already "extinguished," and would conflict with the rule that "[a] debtor's property does not shrink by happenstance of bankruptcy." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 381 (2019) (internal quotation omitted). We think this argument misstates the nature of the property held by the debtor, PCI. When PCI filed for bankruptcy, it possessed claims against BMO. Those claims were subject to a defense based on PCI's own wrongdoing. While the receiver controlled PCI, Minnesota law allowed him to pursue the claims on behalf of creditors, unbound by the corporation's fraudulent acts. But PCI itself was never "cleansed," so the *in-pari-delicto* defense was never "extinguished."

When Kelley transferred the claims to the bankruptcy estate, the custodian of the claims changed, but the claims did not. The claims entered the bankruptcy estate subject to a defense based on PCI's previous fraudulent acts. Bankruptcy law does not provide a vehicle for PCI or its trustee to proceed unbound by PCI's own wrongdoing. *See Grassmueck*, 402 F.3d at 836. No Minnesota decision purports to eliminate the defense of *in pari delicto* in a bankruptcy case. The defense was thus available to BMO in this adversary proceeding.

Our conclusion is consistent with the decision of the Second Circuit in a comparable proceeding arising from another massive Ponzi scheme. *Picard v. JPMorgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 721 F.3d 54 (2d

Cir. 2013). The court there held that the doctrine of *in pari delicto* barred a trustee under the Securities Investor Protection Act—vested with the same powers as a bankruptcy trustee—from asserting claims on behalf of the estate of Bernard Madoff's failed brokerage firm for wrongdoing in which Madoff participated. The court ruled that "[t]he debtor's misconduct is imputed to the trustee because, innocent as he may be, he acts as the debtor's representative." *Id.* at 63.

Kelley suggests that *Madoff* is inapposite because the rule in New York is different from Minnesota law. Decisions applying New York law, however, align with the decisions from Minnesota: the *in-pari-delicto* defense does *not* apply against an innocent non-bankruptcy trustee or receiver who seeks recovery for investors or creditors, although a bankruptcy trustee is subject to the defense as in *Madoff. See Taylor v. U.S. Bank Nat'l Ass'n*, No. H-12-3550, 2015 WL 507526, at *9 (S.D. Tex. Feb. 6, 2015) (applying New York law and concluding that *in-pari-delicto* defense did not apply against a receiver: "[W]hile bankruptcy trustees are regularly precluded by bankruptcy laws from bringing any suit that the corporation could not have brought pre-petition, a receiver appointed by the court outside of a bankruptcy setting is treated differently."); *Walker, Truesdell, Roth & Assocs., Inc. v. Globeop Fin. Servs. LLC*, No. 600469/09, 2013 WL 8597474, at *10 (N.Y. Sup. Ct. May 27, 2013) ("Unlike receivers, bankruptcy trustees are subject to Bankruptcy Code section 541, which prevents such trustees from bringing any suit that the corporation could not have brought pre-petition."); *Williamson v. Stallone*, 905 N.Y.S.2d 740, 751-52 (N.Y. Sup. Ct. 2010) (ruling that *in-pari-delicto* defense did not apply against non-bankruptcy trustee because "[u]nlike a bankruptcy trustee, who is precluded by Section 541 of the Bankruptcy Code from bringing any suit that the corporation could not have brought pre-petition, the Trustee here is an impartial individual appointed by the court who derives his powers from the partnership agreement and state law"); *Williamson v. Pricewaterhousecoopers, LLP*, No. 602106/2004, 2007 WL 5527944 (N.Y. Sup. Ct. Nov. 7, 2007) (ruling that "*in pari delicto* does not apply to an

innocent, non-bankruptcy trustee where any recovery is for the sole benefit of those investors who lost money") (capitalization altered).

Because the district court committed legal error by determining that the defense was unavailable against Kelley-as-trustee, the court abused its discretion. The question remains whether this court should remand for the district court to reconsider the availability of the defense in light of our decision. On this record, we conclude that remand is unnecessary. PCI was created solely to operate the Ponzi scheme. Even assuming that the bank aided the scheme to the degree that Kelley alleges, BMO cannot be more culpable than the entity that orchestrated the scheme. *See Madoff*, 721 F.3d at 64; *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155 (11th Cir. 2006). The defense of *in pari delicto* thus bars Kelley's claims on behalf of PCI. Any other result on remand would be an abuse of discretion, so no further proceedings are warranted. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1157 (Fed. Cir. 2011).

\* \* \*

The judgment of the district court is reversed, and the case is remanded with directions to enter judgment in favor of BMO. The cross-appeal is dismissed as moot.

_____